UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PERFORMANCE DRILLING COMPANY, LLC                                    PLAINTIFF

VS. CIVIL ACTION NO.                                      3:09CV185TSL-JCS

H & H WELDING, LLC, CHRIS HOLIFIELD,
KEN ADCOCK, ADCOCK & MORRISON                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Performance Drilling Company, LLC, for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Defendants H&H Welding, LLC and Chris Holifield have responded to the motion and the court, having considered the parties' memoranda of authorities, along with their arguments and evidence presented at the hearing on plaintiff's motion, concludes that plaintiff's motion should be denied.

Performance Drilling Company (Performance) is a Mississippi limited liability company which provides drilling services to persons and entities engaged in the exploration and production of oil and gas. On March 19, 2009, H&H Welding filed suit against Performance in the Chancery Court of Jones County, Mississippi, alleging that it had contracted with Performance to build certain component parts for oil drilling rigs, that H&H had built and delivered the component parts to Performance in December 2008 in

accordance with the parties' agreement, that despite repeated demands Performance had failed to pay for the component parts as agreed and that Performance was indebted to H&H for nearly $800,000. Included in H&H's complaint was a request for an order of attachment pursuant to Mississippi Code Annotated § 11-31-1 *et seq.* In its complaint and in Chris Holifield's accompanying affidavit, H&H asserted that Performance had incorporated the component parts fabricated by H&H into a drilling rig that had been removed from Mississippi to Louisiana where Performance had placed it in service, drilling a well near Tallulah, Louisiana. In order to secure payment of Performance's debt for the property that had been moved out of state, H&H sought attachment of Performance's real and personal property in Mississippi.

The chancery court immediately issued an order of attachment, finding that Holifield's affidavit and supporting documentation established a prima facie case of H&H's right to recover on its claim against Performance, and that Performance, having removed the property sold to it by H&H to Louisiana, was an "absconding debtor" from which H&H's ability to recover the amount owed by Performance would be significantly impaired or impeded unless an order of attachment was issued. The court required that H&H post a $5,000 bond to protect Performance from injury in the event the attachment was determined to have been wrongfully brought. A supplemental order of attachment was entered the following day,

2

March 20, which provided that "all persons or entities are hereby instructed to immediately forward all funds held in any account or depository or monies owed to [Performance Drilling] be sent and paid immediately to Larry Ishee, as Chancery Clerk for the Second Judicial District of Jones County...."

The order and supplemental order of attachment were entered without notice to or hearing from Performance, which first learned of the attachment when copies of the orders were delivered to Performance's customers and banks. Performance promptly contacted the chancery court on March 25th or 26th concerning the order and was informed that a hearing, as provided by Miss. Code Ann. § 31-11-2, could be scheduled for March 27. However, rather than pursuing a hearing in the chancery court for dissolution of the order of attachment, Performance initiated the present action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief declaring Mississippi's attachment statute unconstitutional because it permits the attachment of property without prior notice and hearing. On April 3, Performance filed its motion for a preliminary injunction, seeking an order from this court enjoining enforcement of Mississippi's attachment statutes, and enjoining enforcement or distribution of the specific orders of attachment issued against its property, requiring the immediate withdrawal and cancellation of these orders by defendants, requiring that defendants retrieve the orders from all persons or entities to

3

whom the orders have been delivered with instructions that they need not comply with such orders, and ordering and directing the chancery clerk to turn over any collected funds to Performance. H&H and Holifield responded in opposition to Performance's motion, insisting that Performance cannot establish its claims herein, much less establish the requisites for injunctive relief, since the attachment statute is constitutional on its face and as applied, and since Performance has failed to avail itself of the remedy specifically provided by § 31-11-2 for securing relief from the orders of attachment.

Due process usually requires prior notice and hearing. See <u>United States v. James Daniel Good Real Property</u>, 510 U.S. 43, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993). However, an ex parte remedy allowing a plaintiff to have property attached without prior notice and hearing does not always violate due process; "a prior hearing may be "postponed where exceptional circumstances justify such a delay, and where sufficient additional safeguards are present." <u>Connecticut v. Doehr</u>, 501 U.S. at 1, 8, 111 S. Ct. 2105, 2111, 115 L. Ed. 2d 1 (1991) (quoting <u>Pinsky v. Duncan</u>, 898 F.2d 852, 855 (2d Cir. 1990)). To determine whether a particular state statute complies with due process, the courts consider three factors: (1) "the private interest that will be affected by the prejudgment measure"; (2) "the risk of erroneous deprivation through the procedures under attack and the probable value of

4

additional or alternative safeguards"; and (3) "the interest of the party seeking the prejudgment remedy, with ... due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections." Doehr, 501 U.S. at 11, 111 S. Ct. at 2112 (citing Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

In Doehr, the case upon which Performance principally relies in support of its motion, the Supreme Court ruled that Connecticut's attachment statute which authorizes prejudgment attachment of real estate without prior notice or hearing, without a showing of extraordinary circumstances, and without a requirement that the person seeking the attachment post a bond, violated the due process clause of the Fourteenth Amendment, at least as applied to the facts presented. In Doehr, the claimant, John DiGiovanni, sought an attachment of Doehr's home to secure payment of a judgment he hoped to obtain on a civil assault complaint against Doehr. The Court concluded that the statute's provision for a prompt post-attachment hearing did not satisfy the requirements of due process because the statute did not otherwise provide adequate safeguards against an erroneous (albeit temporary) deprivation.

5

Addressing the first factor, the Doehr Court observed that while an attachment does not involve a complete, physical, or permanent deprivation of property,

> the property interests that attachment affects are significant. For a property owner like Doehr, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause.

Id. at 11, 111 S. Ct. at 2113. That observation applies to Performance's interest in its property.

As to the second factor, the Court concluded there was a substantial risk of erroneous deprivation. The Court noted that the statute required only that the claimant provide an affidavit attesting to probable cause for his belief that he would prevail; in fact, the affidavit presented by DiGiovanni in support of the request for the writ of attachment consisted of a mere five sentences asserting his belief as to his right to recover. The Court considered the statute's "probable cause" standard, whose meaning was not defined or otherwise apparent, inadequate to guard against the risk of erroneous deprivation, id. at 13-14, 111 S. Ct. at 2113-2114: If probable cause only required the plaintiff to state a facially valid complaint, the risk of erroneous deprivation would be substantial, as it would allow "deprivation of the defendant's property when the claim would fail to convince a jury, [or] when it rested on factual allegations that were

6

sufficient to state a cause of action but which the defendant would dispute." Id. at 13-14, 111 S. Ct. at 2114. Even if probable cause required a finding that the plaintiff would likely receive a favorable judgment, the Court wrote,

> [i]t is self-evident that the judge could make no realistic assessment concerning the likelihood of an action's success based upon these one-sided, self-serving, and conclusory submissions. And ... in a case like this involving an alleged assault, even a detailed affidavit would give only the plaintiff's version of the confrontation. Unlike determining the existence of a debt or delinquent payments, the issue does not concern "ordinarily uncomplicated matters that lend themselves to documentary proof."

Id. at 14, 111 S. Ct. at 2114 (quoting Mitchell v. W.T. Grant Co., 416 U.S. 600, 609, 94 S. Ct. 1895, 1901, 40 L. Ed. 2d 406 (1974)). The Court concluded, moreover, that none of the safeguards afforded by the statutory scheme adequately reduced the risk of erroneous deprivation. Most pertinently, even though the statute provided for a prompt post-attachment adversary hearing with notice, judicial review and a double damages action if the original suit was commenced without probable cause, the statute failed to at least require a showing of some exigent circumstance that warranted dispensing with preattachment notice and hearing. Id. at 14-15, 111 S. Ct. at 2114-2115.

The Court in Doehr contrasted the situation with which it was presented with that presented in Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974), in which the Court upheld a Louisiana statute which did not require notice or

7

hearing prior to sequestration and which included safeguards similar to some of those provided in the Connecticut statute. The Court distinguished Mitchell on a number of bases, including, that the "the plaintiff [in Mitchell] had a vendor's lien to protect"; the creditor was required to set forth with specificity the nature of his claim by verified petition or affidavit and the risk of error was minimal because the determination of the likelihood of recovery involved a dispute between debtor and creditor, an uncomplicated matter that lent itself to documentary proof; the plaintiff was required to file a sufficient bond; and exigent circumstances existed which created a risk the property would not have been available to satisfy a judgment, e.g., the potential for waste or alienation of the property. Doehr, 501 U.S. at 15, 111 S. Ct. at 2114-15.

The third factor identified in Doehr evaluates the interests of the plaintiff. In Doehr, the Court found that the plaintiff "had no existing interest in [the tortfeasor's] real estate when he sought the attachment. His only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action." Doehr, 501 U.S. at 16, 111 S. Ct. at 2115.

Turning to Mississippi's attachment procedures, pursuant to Mississippi Code Annotated § 11-31-1,

> The chancery court shall have jurisdiction of attachment suits based upon demands founded upon any indebtedness,

8

> whether the same be legal or equitable, or for the
> recovery of damages for the breach of any contract,
> express or implied, or arising ex delicto against any
> nonresident, absent or absconding debtor, who has lands
> and tenements within this state, or against any such
> debtor and persons in this state who have in their hands
> effects of, or are indebted to, such nonresident, absent
> or absconding debtor. The court shall give a decree in
> personam against such nonresident, absent or absconding
> debtor if summons has been personally served upon him,
> or if he has entered an appearance.

Section 11-31-2 establishes the specific requirements for obtaining an order of attachment. This section requires that a complainant seeking an order of attachment provide an affidavit which includes, among other things, "[a] detailed statement of the facts and grounds which entitle the complainant to an order of attachment including a statement of the specific reasons why the complainant's ability to recover the amount of his claim may be endangered or impeded if the order of attachment is not issued." The chancellor is charged to examine the affidavit and bill of complaint and is authorized (but not required) to issue an order of attachment only if he finds that the complainant's affidavit establishes a prima facie case demonstrating his right to recover on his claim against the defendant and also finds that "the complainant's ability to recover the amount of his claim may be significantly impaired or impeded" unless the order of attachment is issued. The statute further requires that as a condition to issuance of an order of attachment, the complainant must "give[] security in an amount satisfactory to the chancellor to abide

further orders of the court and to protect the defendant from injury should the action of attachment be judicially determined to have been wrongfully brought."

The statute provides that if an order of attachment is issued, then upon request, the defendant is "entitled to an immediate post-seizure hearing to seek dissolution of the order of attachment." At such hearing, "the chancellor shall order dissolution of the order of attachment unless the complainant establishes by satisfactory proof the grounds upon which the order was issued, including the existence of a claim as described in section 11-31-1, and the impairment or impediment which a failure to continue the attachment could bring to the complainant's ability to recover the amount of such debt." Alternatively, the debtor may regain immediate possession of the property attached by posting a bond of 125% of the value of the property attached or the amount of the claim, whichever is less. And finally, the chancellor may award actual damages to the defendant if he finds that the attachment was not brought in good faith.

In the court's opinion, the statute satisfies the requirements of due process. Unlike Doehr, which permitted attachment based on nothing more than the complainant's naked assertion that he believed there was probable cause for his claim, the Mississippi statute requires that the complainant set forth the specific facts supporting his claim and permits an order of

10

attachment to issue only if the chancellor finds the complainant has established a prima facie case demonstrating his right to recover on his claim. Moreover, in contrast to Doehr, which required no exigent circumstance, the Mississippi statute requires that the complainant state specific reasons why his ability to recover on his claim is at risk if the order of attachment is not issued, and attachment is only available if the chancellor finds that the complainant's ability to recover may be significantly impaired or impeded without an order of attachment. Further, the Mississippi procedure mandates that the complainant put up a bond to protect the defendant in the event the attachment is later found to have been wrongful.

This case does resemble Doehr in one respect, in that here, as in Doehr, the complainant had no preexisting interest in the property sought to be attached; instead, his "only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action." Doehr, 501 U.S. at 16, 111 S. Ct. at 2115. It seems that because the property for which Performance was indebted and in which H&H arguably had a preexisting interest had been removed from the jurisdiction, H&H sought to attach other property of Performance that could satisfy the debt and this other property is unrelated to the debt. However, the fact that the claimant's interest in the property sought to be attached was minimal was but one factor

11

among many that contributed to the Court's decision in Doehr. And while this is a factor to be considered, due process does not require a nexus between the claim and the property to be attached.

Equally if not more weighty in the Doehr Court's analysis was the fact that the claim on which the attachment was predicated was a tort claim. The Doehr Court considered the procedure which provided for the claimant's submission of an affidavit of probable cause to be problematic from a due process standpoint because the procedure did not protect the defendant against the uncertainties associated with intentional tort cases: "Unlike determining the existence of a debt or delinquent payments, the issue does not concern 'ordinarily uncomplicated matters that lend themselves to documentary proof.'" Id. at 14, 111 S. Ct. at 2114 (quoting Mitchell, 416 U.S. at 609, 94 S. Ct. at 1901). The Court noted that "disputes between debtors and creditors more readily lend themselves to accurate ex parte assessments of the merits." Doehr, 501 U.S. at 17, 111 S. Ct. at 2115. The present case is of the debtor/creditor variety which was explicitly distinguished by the Doehr Court. See Shaumyan v. O'Neill, 987 F.2d 122, 127 (2d Cir. 1993) (upholding Connecticut's attachment statute against due process challenge in case involving dispute between debtor and creditor).

Of course, this court recognizes that under Mississippi's attachment procedures, there is a risk of erroneous deprivation;

such a risk is practically unavoidable. But in the court's opinion, the risk here is not substantial but rather minimal in view of these many safeguards having been included in the statute. The inclusion of safeguards to minimize the risk of an erroneous pre-hearing deprivation, coupled with the availability of an immediate post-attachment hearing to dissolve the attachment, meets the demands of due process.

Relying heavily on Doehr, Performance has insisted to this court that it was not required to avail itself of its statutory right to an immediate post-attachment hearing as a means of seeking relief from what it contends was a wrongful attachment because in its view, the statute still violates due process, even taking into account the availability of a post-attachment hearing. Performance bases its position in this regard on Doehr's statement that a delayed post-seizure hearing "will not cure the temporary deprivation that an earlier hearing might have prevented." Id at 15, 111 S. Ct. at 2114. That statement, however, must be considered in the context of the Court's finding in Doehr that the Connecticut statute created an intolerably high risk of erroneous pre-hearing deprivation without adequate safeguards to counter or lessen that risk. Manifestly, the Court neither held nor suggested that a post-deprivation hearing will not satisfy the demands of due process where there is but a minimal risk of a wrongful pre-hearing deprivation. Were that the case, the

13

availability of a post-deprivation hearing would be immaterial in the due process analysis; and that has never been so.

Performance had (and still has) the right to a post-attachment hearing, at which the attachment *will be dissolved* unless H&H can satisfy the court that the debt claimed is in fact owed.[1] In addition, Performance also has the right under the attachment statute to post a bond for 125% of the debt claimed to be owing or the value of the property attached, whichever is less.

For all of these reasons, the court concludes that Performance has failed to establish a likelihood of success on the merits of its claim, and further, that Performance has an adequate remedy at law, and it is therefore not entitled to the requested injunctive relief.

---

[1] This court would be remiss if it failed to note that Performance denies it owes the debt claimed by H&H, evidently on two bases. First, it claims that whatever money is owed for product fabricated by H&H is owed by O&G Leasing, Performance's parent company, rather than by Performance; and Performance further contends that it takes issue with the amount claimed by H&H in any event based on issues regarding the quality (or lack thereof) of the products delivered by H&H. These are issues that could have been and can be raised before the chancellor.

Performance has raised other issues which deserve serious consideration, but which may also be raised before and considered by the chancellor. That is, Performance may present to the chancellor its arguments that it is not an absconding debtor, given the facts that it has remained present at all times in Mississippi and that the drilling rig was used in Louisiana with full knowledge and implicit consent of H&H, and its further argument that the fact that some portion of the property is located in Louisiana has done nothing to impair or impede H&H's ability to recover on Performance's alleged debt.

Accordingly, it is ordered that Performance's motion for preliminary injunction is denied.

SO ORDERED this 15th day of April, 2009.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE